# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | | |
|---|---|---|---|
| THOMAS COX, SR., *et al.*, | : | | |
| | : | | |
| Plaintiffs, | : | Civil Action No.: | 16-1788 (RC) |
| | : | | |
| v. | : | Re Document No.: | 7, 8 |
| | : | | |
| DISTRICT OF COLUMBIA, | : | | |
| | : | | |
| Defendant. | : | | |

## MEMORANDUM OPINION

**GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT; GRANTING IN PART AND DENYING IN PART DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## I. INTRODUCTION

Plaintiffs, the parents of T.C., a minor child with special needs, seek to recover from Defendant, the District of Columbia ("the District"), the attorneys' fees and costs incurred during their administrative proceeding against the District of Columbia Public Schools ("DCPS") under the Individuals with Disabilities Education Act of 2004 ("IDEA"), 20 U.S.C. § 1415 *et. seq.* Plaintiffs seek over $50,000 in attorneys' fees and costs billed by their attorney, Elizabeth Jester, over the course of almost two years. The parties agree that Plaintiffs were the prevailing parties in the administrative proceedings, but the District disputes the reasonableness of their requested fees and argues that the Court should apply a reduced hourly rate. The Court holds that Plaintiffs have failed to demonstrate either that the full USAO *Laffey* Matrix rates sought by Plaintiffs are the prevailing market rates for IDEA litigation, or that the underlying due process proceedings were sufficiently complex to warrant the award of full USAO *Laffey* Matrix rates. The Court therefore concludes that only some of Plaintiffs' requested fees are reasonable and reduces

Plaintiffs' attorneys' fees accordingly. The Court grants Plaintiffs' motion for summary judgment in part and denies it in part, and grants Defendant's cross-motion for summary judgment in part and denies it in part.

## II. FACTUAL BACKGROUND

In February 2015, Plaintiffs Thomas Cox, Sr. and Delores Lewis, filed an administrative due process complaint against DCPS under the IDEA, because they felt DCPS was not meeting the special education needs of their son, T.C. Compl. ¶¶ 2, 4, ECF No. 1. Plaintiffs alleged that DCPS denied T.C. the free and appropriate public education he was entitled to under the IDEA. *See* Pls.' Mot. Summ. J., Ex. 1 ("Hearing Officer Determination") at 3–4, ECF No. 7-4 (listing the issues to be determined in the proceedings). In support of their administrative complaint, Plaintiffs contended that DCPS failed to meet T.C.'s specified needs during the 2014–2015 academic year in three respects. First, Plaintiffs argued that DCPS did not obtain and implement the Individualized Education Program (the "IEP") from T.C.'s prior school and failed to implement its own IEP, thus denying T.C. a Free Appropriate Public Education ("FAPE") for the 2014–15 school year. Hearing Officer Determination at 3. Second, they contended that DCPS's IEP—which it eventually created for T.C. in October 2014—provided T.C. with "an inadequate amount of special education hours, insufficient occupational therapy, insufficient assistive technology, and inappropriate and insufficient goals and objectives," therefore denying him a FAPE. Hearing Officer Determination at 3. Third, Plaintiffs claimed that in preparing the October 2014 IEP, DCPS failed to consider T.C.'s most recent evaluations, disregarded Plaintiffs' concerns, and improperly convened an IEP team "without the presence of a general education teacher." Hearing Officer Determination at 4.

An administrative due process hearing was set for April 2015, but had to be rescheduled to the next month, because Plaintiffs had a personal emergency. Compl. ¶ 4; Hearing Officer Determination at 2. After the hearing, Hearing Officer Michael Lazan ("the Hearing Officer"), awarded Plaintiffs most of the relief they sought. The Hearing Officer ordered DCPS to modify T.C.'s IEP to include specialized instruction, provide a psychoeducational assessment, and convene an IEP team to review the assessment and "formulate an appropriate program" for T.C. Hearing Officer Determination at 18.

In February 2016, Plaintiffs' counsel, Elizabeth Jester, submitted an application for payment of attorneys' fees to DCPS under the fee-shifting provision of the IDEA. Compl. ¶ 5; Pls.' Mot. Summ. J., Ex. 2, ECF No. 7-5. As of the filing of the complaint on September 7, 2016, Plaintiffs had not received any payment from the District. Compl. ¶ 5.

In support of their claim for attorneys' fees, Plaintiffs filed the affidavits of four attorneys who frequently represent clients involved in IDEA litigation. *See* Verified Statement of Douglas Tyrka ("Tyrka Aff."), ECF No. 7-11; Verified Statement of Diana M. Savit ("Savit Aff."), ECF No. 7-12; Verified Statement of Domiento C.R. Hill ("Hill Aff."), ECF No. 7-13; Verified Statement of Alana Hecht ("Hecht Aff."), ECF No. 7-14. These affidavits provide information on the practitioners' IDEA litigation experience, their perceived complexity of the proceedings, and their hourly rates charged. Plaintiffs' first affiant, Douglas Tyrka, states that his firm has billed DCPS for hundreds of cases, and each bill has requested the full rate in the USAO *Laffey* matrix. Tyrka Aff. ¶ 13. The second affiant states that she bills the same amount for IDEA cases and non-IDEA cases, and that IDEA cases are "at least as complex as employment discrimination and commercial dispute work." Savit Aff. ¶¶ 5–6. The third affiant states that he has "restricted [him]self" to charging seventy-five percent of the USAO *Laffey* matrix rates,

because his firm values speedy recovery of fees over the prospect of full *Laffey* rates. Hill Aff.

¶ 14. The final affiant cited by Plaintiffs states that she is "typically awarded at least $270.00 per

hour for [her] IDEA work." Hecht Aff. ¶ 13.

### III.  LEGAL BACKGROUND

Under the IDEA, "every child with a disability in this country is entitled to a 'free

appropriate public education,' or FAPE." *Leggett v. District of Columbia*, 793 F.3d 59, 62 (D.C.

Cir. 2015) (quoting 20 U.S.C. § 1400(d)(1)(A)). The "primary purpose" of the IDEA is "to

ensure that all children with disabilities have available to them a[n] . . . education that

emphasizes special education and related services designed to . . . prepare them for further

education, employment, and independent living." *Id.* at 63 (quoting 20 U.S.C. § 1400(d)(1)(A))

(alteration in original). "A free appropriate public education entitles 'each child with a disability'

to an 'individualized education program' that is tailored to meet his or her unique needs." *Henry

v. District of Columbia*, 750 F. Supp. 2d 94, 96 (D.D.C. 2010) (quoting 20 U.S.C.

§§ 1414(d)(1)(A)–(2)(A)).

The IEP is the "primary vehicle" for implementing the IDEA. *Lesesne ex rel. B.F. v.

District of Columbia*, 447 F.3d 828, 830 (D.C. Cir. 2006). IEPs are "[p]repared at meetings

between a representative of the local school district, the child's teacher, the parents or guardians,

and, whenever appropriate, the disabled child." *Id.* (alteration in original). It "sets out the child's

present educational performance, establishes annual and short-term objectives for improvements

in that performance, and describes the specially designed instruction and services that will enable

the child to meet those objectives." *Id.*

When the parents of a student with a disability are dissatisfied with a school district or

agency's "identification, evaluation, or educational placement of the child, or the provision of a

free appropriate public education to such child," 20 U.S.C. § 1415(b)(6), the IDEA entitles them to an "impartial due process hearing," *id.* § 1415(f). If a hearing officer finds that a school district or agency denied a child a FAPE, he may award, among other remedies, compensatory education, which is "educational services . . . to be provided prospectively to compensate for a past deficient program." *Reid ex rel. Reid v. District of Columbia*, 401 F.3d 516, 522 (D.C. Cir. 2005) (*quoting G. ex rel. RG v. Fort Bragg Dependent Schs.*, 343 F.3d 295, 308 (4th Cir. 2003)). Any party aggrieved by the hearing officer's determination may bring a civil action in state or federal court. *See* 20 U.S.C. § 1415(i)(2).

Under the IDEA, prevailing parties in the administrative proceedings are entitled to an award of reasonable attorneys' fees and costs. 20 U.S.C. § 1415(i)(3)(B). The *Laffey* Matrix is a fee schedule used in some cases to determine reasonable hourly rates for legal work. *See generally Laffey v. Nw. Airlines, Inc.*, 572 F. Supp. 354, 371–75 (D.D.C. 1983), *aff'd in part, rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984), *overruled in part on other grounds*; *Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (establishing the first *Laffey* fee matrix, in the context of a longstanding employment discrimination class action). It is not unique to the IDEA. *See, e.g.*, *Laffey*, 572 F. Supp. 354. The United States Attorney's Office for the District of Columbia prepares the matrix for use in federal litigation cases in which a "fee-shifting" statute allows prevailing plaintiffs to recover their attorneys' fees. *See Eley v. District of Columbia*, 793 F.3d 97, 101 (D.C. Cir. 2015); *see also USAO Attorney's Fees Matrix—2016–2017* ("2016–2017 *Laffey* Matrix"), Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/889176/download (last visited July 23, 2017); *USAO Attorney's Fees Matrix—2015–2016* ("2015–2016 *Laffey* Matrix"), Civil Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/file/796471/download (last visited

July 23, 2017); *USAO Attorney's Fees Matrix—2014–2015* ("2014–15 *Laffey* Matrix"), Civil

Div. of the U.S. Attorney's Office for D.C., https://www.justice.gov/sites/default/files/usao-

dc/legacy/2014/07/14/Laffey%20Matrix_2014-2015.pdf (last visited July 23, 2017). Updated

*Laffey* Matrix rates are available through the U.S. Attorney's Office's website. *See Civil*

*Division*, U.S. Attorney's Office for D.C., https://www.justice.gov/usao-dc/civil-division (last

updated Aug. 23, 2017) (publishing links to *Laffey* matrices at the bottom of the webpage).

## IV. LEGAL STANDARD

Summary judgment is warranted when "the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). The movant bears the initial burden of identifying portions of the record that

demonstrate the absence of any genuine issue of material fact. *See* Fed. R. Civ. P. 56(c)(1);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In response, the non-movant must point to

specific facts in the record that reveal a genuine issue that is suitable for trial. *See id.* at 324. In

an action for attorneys' fees following an administrative proceeding under the IDEA, the "party

moving for summary judgment on legal fees must demonstrate prevailing party status and the

reasonableness of the fees requested in terms of hours spent and hourly rate." *McAllister v.*

*District of Columbia*, 21 F. Supp. 3d 94, 99 (D.D.C. 2014).

## V. ANALYSIS

The parties filed cross-motions for summary judgment on the amount of attorneys' fees

owed to Plaintiffs. *See* Pls.' P. & A. Supp. Pls.' Mot. Summ. J. ("Pls.' Mot. Summ. J."), ECF No.

7-2; Def.'s Cross-Mot. Summ. J. ("Def.'s Mot. Summ. J."), ECF No. 8.[1] Plaintiffs seek

$54,813.08, calculated using the full rates in the USAO *Laffey* Matrix. Compl. ¶ 7; Pls.' Mot.

Summ. J. at 6; *see* Pls.' Mot. Summ. J., Ex. 3 ("J & W Invoice"), ECF No. 7-6. The District

argues that the Court should award an hourly rate equal to three-quarters of the applicable *Laffey*

Matrix rates. *See* Def.'s Mot. Summ. J. at 12–14.

Under the IDEA, a district court may award "reasonable attorneys' fees" to a prevailing

party who is the parent of a child with a disability. 20 U.S.C. § 1415(i)(3)(B). Thus, in cases like

this, courts use a two-step inquiry: first, the court must determine whether the party seeking

attorney's fees is the prevailing party, and second, the court must determine whether the

requested fees are reasonable. *See Jackson v. District of Columbia*, 696 F. Supp. 2d 97, 101

(D.D.C. 2010). The Court first addresses Plaintiffs' status as the prevailing party in the

administrative due process hearing. The Court will then determine the appropriate fee award

based on the reasonableness of Plaintiffs' counsel's hourly rate.

## A. Prevailing Party

Plaintiffs argue that they were the prevailing parties in the underlying administrative due

process proceedings. Compl. ¶ 4; Pls.' Statement ¶ 4, ECF No. 7-1. The District does not dispute

Plaintiffs' status as prevailing parties. Def.'s Resp. Pls.' Statement ¶ 4, ECF No. 8-1. The Court

agrees with the parties.

In *District of Columbia v. Straus*, the Court of Appeals applied a three-part test to

determine prevailing party status: "(1) there must be a 'court-ordered change in the legal

---

[1] Because the District filed its motion and memorandum of points and authorities as one
document, thus creating some duplicative page numbers, the Court utilizes the ECF document
page numbers when referring to Defendant's cross-motion for summary judgment, Def.'s Mot.
Summ. J.

relationship' of the parties; (2) the judgment must be in favor of the party seeking the fees; and (3) the judicial pronouncement must be accompanied by judicial relief." 590 F.3d 898, 901 (D.C. Cir. 2010) (quoting *Thomas v. Nat'l Sci. Found.*, 330 F.3d 486, 492–93 (D.C. Cir. 2003)). A party need not succeed on every claim to be the prevailing party; in calculating fee awards, it is within a court's discretion to consider the extent to which a party prevails on various issues. *Joaquin v. Friendship Pub. Charter Sch.*, 188 F. Supp. 3d 1, 7 (D.D.C. 2016) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433–37 (1933)).

Here, the Hearing Officer found that DCPS denied T.C. a FAPE, altering the relationship between the parties and satisfying the first prong of *Straus. See* Hearing Officer Determination at 12. As for the second and third prongs, the Hearing Officer awarded Plaintiffs nearly all the relief they sought and entered an Order in Plaintiffs' favor, requiring DCPS to make various adjustments in T.C.'s IEP. Hearing Officer Determination at 17–18. Therefore, Plaintiffs obtained a favorable judgment and declaratory relief. Taken together, Plaintiffs were indeed the prevailing parties in the due process hearing. The Court thus proceeds to determine the appropriate attorneys' fees and costs award.

### B. Appropriate Fee Award

As the prevailing parties in the administrative proceedings, Plaintiffs seek reimbursement of their attorneys' fees at the full applicable USAO *Laffey* Matrix rates because they allege that these rates are the prevailing market rates for IDEA litigation. Jester Decl. ¶¶ 10–12, ECF No. 7-7; *see* Pls.' Mot. Summ. J. at 5–15; J & W Invoice. The District contends that Plaintiffs have failed to show that full *Laffey* Matrix rates are the prevailing fee rates in the IDEA litigation community. Def.'s Mot. Summ. J. at 5–7. Instead, the District argues, the Court should reduce the Plaintiffs' fee award by twenty-five percent given that the USAO *Laffey* Matrix applies to

complex federal litigation, not IDEA proceedings, and that this is the position taken by an "overwhelming majority" of the courts in this circuit. Def.'s Mot. Summ. J. at 10 & n.2, 12–14. The Court agrees with the District.

When plaintiffs succeed in their administrative IDEA actions, the Court, "in its discretion, may award reasonable attorneys' fees." 20 U.S.C. § 1415(i)(3)(B)(i). Under the IDEA, the fee award "shall be based on rates prevailing in the community in which the action or proceeding arose for the kind and quality of services furnished." *Id.* § 1415(i)(3)(C). If the Court finds that the requested attorneys' fees "unreasonably exceed[] the hourly rate prevailing in the community for similar services by attorneys of reasonably comparable skill, reputation, and experience," the Court "shall reduce" any attorneys' fees awarded accordingly. *Id.* § 1415(i)(3)(F)(ii).

In *Save Our Cumberland Mountains, Inc. v. Hodel ("SOCM")*, 857 F.2d 1516, 1517 (D.C. Cir. 1988), the D.C. Circuit developed a three-part test for determining the appropriate amount of attorneys' fees to award when statutes provide for such an award. First, the Court must determine the "number of hours reasonably expended in litigation." *Id.*; *see also Eley v. District of Columbia*, 793 F.3d 97, 100 (D.C. Cir. 2015) (setting forth the *SOCM* test for reasonable attorneys' fees as the appropriate test in IDEA litigation). Second, the Court must set the "reasonable hourly rate." *SOCM*, 857 F.2d at 1517. Third, the Court must determine whether the use of a multiplier is warranted. *Id.*

The District does not challenge the number of hours that Plaintiffs' counsel expended litigating their IDEA case, and the IDEA prohibits the use of any "bonus or multiplier." 20 U.S.C. § 1415(i)(3)(C). Thus, the Court addresses only the second prong in the *SOCM* test—the reasonableness of Plaintiffs' counsel's hourly rate. *See Eley*, 793 F.3d at 100 (analyzing

attorneys' fees similarly). The Court also addresses the appropriateness of an award of fees for paralegal services.

1. Attorneys' Fees

Plaintiffs argue that the attorneys' fees and costs they seek are reasonable given the number of hours that Ms. Jester billed and her hourly rate. Pls.' Mot. Summ. J. at 3. Ms. Jester, they claim, should receive the full *Laffey* rate because of her "modest and reasonable" billing practices, her over thirty-five years' experience and specialized knowledge of the practice area, and because it represents the prevailing market rate in the IDEA litigation community. Pls.' Mot. Summ. J. at 3–6. The District does not dispute either the number of hours that Plaintiffs' counsel billed or her billing practices. *See* Def.'s Mot. Summ. J. However, the District argues that Ms. Jester's hourly rate is unreasonable because Plaintiffs have failed to demonstrate that full USAO *Laffey* Matrix rates are the prevailing rates in the IDEA community. Def.'s Mot. Summ. J. at 9–11. The District asserts that the underlying due process proceedings were not sufficiently complex as to warrant an award of full USAO *Laffey* Matrix rates and thus contends that seventy-five percent of those rates is more appropriate. Def.'s Mot. Summ. J. at 12–14. The Court agrees with the District and reduces Plaintiffs' attorneys' fees by twenty-five percent.

To determine the reasonableness of an hourly rate, the Court must evaluate three sub-elements: (1) "the attorney['s] billing practices," (2) "the attorney['s] skill, experience, and reputation," and (3) "the prevailing market rates in the relevant community." *Covington v. District of Columbia*, 57 F.3d 1101, 1107 (D.C. Cir. 1995). Because the District argues only that Plaintiffs are incorrect in their assessment of the prevailing rate in the community for IDEA litigation, *see generally* Def.'s Mot. Summ J. at 5–11, the Court only addresses that element.

Courts must "fix[] the prevailing hourly rate in each particular case with a fair degree of accuracy." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1325 (D.C. Cir. 1982); *see also Eley*, 793 F.3d at 100. The plaintiff bears the burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984); *see Eley*, 793 F.3d at 100; *Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 84 (D.D.C. 2016) (same); *see also Nat'l Ass'n of Concerned Veterans*, 675 F.2d at 1325 ("An applicant is required to provide *specific* evidence of the prevailing community rate for the type of work for which he seeks an award." (emphasis added)).

Fee applicants may submit a relevant attorneys' fee matrix, which serves as "'a useful starting point' in calculating the prevailing market rate." *Eley*, 793 F.3d at 100 (quoting *Covington*, 57 F.3d at 1109). If IDEA plaintiffs wish to request rates based on the *Laffey* Matrix, they must provide "'evidence that their 'requested rates are in line with those prevailing in the community for *similar services*,' *i.e.*, IDEA litigation." *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109). Such evidence may be found in "[1] surveys [that] update [the Matrix]; [2] affidavits reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases; and [3] evidence of recent fees awarded by the courts or through settlement to attorneys with comparable qualifications handling similar cases." *Id.* at 101 (emphasis added) (internal quotation marks omitted) (quoting *Covington*, 57 F.3d at 1109). As the D.C. Circuit has made clear, a district court may not simply conclude that "some version of the *Laffey* matrix is presumptively reasonable." *Eley*, 793 F.3d at 105 (internal quotation mark omitted) (quoting *Eley v. District of Columbia*, 999 F. Supp. 2d 137, 159 (D.D.C.

2013))); *see also Snead v. District of Columbia*, 139 F. Supp. 3d 375, 379 (D.D.C. 2015) ("*Laffey* should not be the default rate for fees awarded pursuant to [the] IDEA.").

Plaintiffs provide five justifications for their request for the *Laffey* Matrix rate. First, they produce affidavits from other IDEA practitioners describing their hourly rates. Pls.' Mot. Summ. J. at 7–8, ECF No. 7-2. Second, Plaintiffs argue that this case is uniquely complex. *Id.* at 9–15. Third, Plaintiffs cite cases—which they contend are similar to this one—where attorneys have received the rates they sought, including some awards at *Laffey* Matrix rates. Pls.' Mot. Summ. J. at 9–15. Fourth, Plaintiffs provide the United States's Statement of Interest filed in *Eley*, which discusses the various *Laffey* matrices. *Id.* at 8–9; Pls.' Mot. Summ. J., Ex. 12 ("Statement of Interest"), ECF No. 7-15. Fifth, Plaintiffs urge the Court to consider the District's delay in paying attorneys' fees as a factor supporting higher rates. Pls.' Mot. Summ. J. at 16–17. The Court addresses each of Plaintiffs' five arguments in turn.

### a. Affidavits

Plaintiffs provide, in addition to their own attorney's affidavit, affidavits from four other IDEA practitioners. These affidavits describe the practitioners' experience and skills, and the difficulties of IDEA litigation. *See generally* Tyrka Aff.; Savit Aff.; Hill Aff.; Hecht Aff. The District argues that these affidavits are unhelpful in determining the appropriate hourly rate, because they do not sufficiently explain how IDEA litigation is complex in the context of broader federal litigation, nor do they provide the hourly rates actually recovered by the affiant attorneys. Def.'s Mot. Summ. J. at 8–9. The Court agrees with the District's arguments, and thus holds that the affidavits do not justify Plaintiffs' claim that they are entitled to full *Laffey* Matrix rates.

As outlined above, IDEA plaintiffs requesting a particular hourly rate may support their requested hourly rate by providing "affidavits reciting the precise fees that attorneys with similar qualifications have *received* from fee-paying clients in comparable cases." *Eley*, 793 F.3d at 101 (emphasis added) (quoting *Covington*, 57 F.3d at 1109). Merely alleging the fees charged by other practitioners does not provide convincing evidence of the prevailing market rate. *See, e.g.*, *Flood v. District of Columbia*, 172 F. Supp. 3d 197, 212–13 (D.D.C. 2016) (finding that the declarations provided by the plaintiff "leave some uncertainty" because "while each of the declarants avers that he or she charges, or has charged, paying clients at *Laffey* rates, the declarants each fail to specify what proportion of their clients actually *pay* these rates"). Plaintiffs must demonstrate the rates that practitioners actually collected from clients or that courts awarded those practitioners. *See, e.g.*, *Wilhite v. District of Columbia*, 196 F. Supp. 3d 1, 8 (D.D.C. 2016) (stating that affidavits focusing on fees charged by the practitioners rather than those actually received were not helpful to the Court in determining the prevailing market rates); *see also Platt v. District of Columbia*, 168 F. Supp. 3d 253, 266 (D.D.C. 2016).

Of Plaintiffs' four affiants, three do not provide the specific rates that they typically *receive*; they only state how much they charge. One affiant mentions that his firm bills at the applicable LSI *Laffey* rate, not that he typically receives or is awarded this amount. Tyrka Aff. ¶ 13.[2] Another states that he has "restricted [him]self" to requesting rates from DCPS at seventy-

---

[2] Douglas Tyrka's affidavit briefly mentions the fees that he received through two settlements with DCPS, in which DCPS paid Mr. Tyrka most of what he requested using LSI *Laffey* Matrix rates. *See* Tyrka Aff. ¶ 15. Although evidence of prevailing community rates may include "evidence of recent fees awarded . . . through settlement," *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109), Mr. Tyrka's settlements have limited persuasive value because his law firm simultaneously settled hundreds of cases, and a fee cap applied to the cases. *See* Tyrka Aff. ¶ 15 & n.1 (explaining that, although on these two occasions "DCPS settled large groups of Tyrka & Associates' bills," "federal law prohibited the District of Columbia from paying attorneys' fees for IDEA cases in excess of $4,000 per case"). In light of the large number of

five percent of the USAO *Laffey* Matrix. Hill Aff. ¶ 14.[3] A third practitioner merely states that she charges the same rates for IDEA and non-IDEA litigation, Savit Aff. ¶ 5, and discusses the relative complexity of IDEA litigation, *see* Savit Aff.

Three out of four affidavits that Plaintiffs provided thus do not help the Court in determining the prevailing community rate for IDEA litigation, because they lack any indication of the "precise fees" that the practitioners have "received." *See Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109); *see also Flood*, 172 F. Supp. 3d at 212 (stating that rates charged by attorneys in IDEA litigation are "persuasive evidence of the current market rate," but that the affidavits provided leave uncertainty as to whether the attorneys "regularly *collect* fees comparable to those supplied by the USAO *Laffey* Matrix"). Instead, most of the attorneys focus on the fees they *charged*. For that reason, most of the affidavits do not help the Court determine whether the *Laffey* Matrix rates that Plaintiffs request "are in line with those prevailing in the community." *See id.* at 104 (quoting *Covington*, 57 F.3d at 1109); *see also Wilhite*, 196 F. Supp. 3d at 8; *Flood*, 172 F. Supp. 3d at 212–13; *Platt*, 168 F. Supp. 3d at 266. The Court therefore

---

cases being settled at the same time and the applicable $4,000 fee caps, DCPS's incentives were different from more contemporary cases, and accordingly did not reflect the prevailing fee rate in the community. *See Rooths v. District of Columbia,* 802 F. Supp. 2d 56, 62 (D.D.C. 2011) (reasoning, in a case in which the plaintiff cited similar settlements, that "the amount of fees that the District agrees to pay an attorney as part of a bulk settlement is not determined by market forces").

[3] In his 2015 affidavit, Plaintiffs' affiant Domiento Hill stated that "99[] percent of [his] current legal work is in the field of IDEA law in the District of Columbia," that his practice of billing clients at seventy-five percent of the *Laffey* billing rates is done out of necessity, and that continuing to bill at that rate will force him to close his practice. Hill Aff. ¶¶ 3, 10–11, 13–14. The Court notes that it does not appear as though Mr. Hill has been forced to close down his practice. In fact, as recently as July 16, 2017, Mr. Hill brought a case in this district to recover fees under the IDEA. *See Cook v. District of Columbia*, 17-cv-1407 (CKK), (D.D.C. 2017). Courts have defined market rates as those that are adequate to "attract competent counsel." *See Reed v. D.C.*, 843 F.3d 517, 524 (D.C. Cir. 2016). Because seventy-five percent of the *Laffey* Matrix rate continues to attract Mr. Hill to IDEA cases, a strong argument can be made that the seventy-five percent rate reflects the market rate.

places considerably more reliance on the affidavit that does describe an hourly rate that the attorney *received* for her IDEA work.

The sole affiant who actually mentions the amount of fees that she charges and has received states that she is "typically awarded at least $270.00 per hour" for IDEA litigation. *See* Hecht Aff. at ¶ 13. But a $270.00 hourly rate is only eighty-three percent of the applicable *Laffey* Matrix rate. *See USAO Attorney's Fees Matrix—2015–2016* (setting a $325.00 hourly rate for attorneys with four to five years of experience); Hecht Aff. ¶ 3 (indicating that Ms. Hecht has been litigating IDEA cases "since 2010," and that, as such, she had five years of experience in 2015 when she executed the verified statement). Thus, Ms. Hecht's affidavit does not support Plaintiffs' proposed *Laffey* Matrix rate. If anything, the affidavit undermines Plaintiffs' proposal by showing that prevailing community rates may indeed be less than those contained in the USAO *Laffey* Matrix. Regardless, the declaration of one practitioner alone is insufficient to establish the prevailing market rates for IDEA litigation. *See, e.g.*, *Flood*, 172 F. Supp. 3d at 212–13 (finding the six affidavits provided by the plaintiff inconclusive in determining the prevailing IDEA market rates).

Taken together, the affidavits cited by Plaintiffs are alone insufficient to justify their contention that *Laffey* Matrix rates are comparable to rates prevailing in the community for similar services in IDEA litigation.[4] The Court next turns to the cases that Plaintiffs argue support their claim that *Laffey* rates apply.

---

[4] The Court notes that the declarant–attorneys in Plaintiffs' affidavits state that their practices are struggling in part because they do not receive full *Laffey* Matrix rates and LSI *Laffey* Matrix rates. *See, e.g.*, Hecht Aff. ¶ 14 ("If all judges . . . were to award . . . 75% of the United States Attorney's Office version of the '*Laffey* matrix,' I would likely be forced to leave my current practice and either work only for paying clients or find entirely different work."). But to the extent that the attorneys rely on a public interest in granting them larger fee awards, *see, e.g.*, Savit Aff. ¶ (explaining that given the uncertainty of full *Laffey* Matrix rates recovery she

*b. Complexity*[5]

Plaintiffs state that their attorney charged full *Laffey* Matrix rates because of the complexity of IDEA litigation. Pls.' Mot. Summ. J. at 9–15; Jester Decl. ¶¶ 22–23; *see also* Tyrka Aff. ¶¶ 5–8; Savit Aff. ¶¶ 6–11; Hill Aff. ¶¶ 4–7; Hecht Aff. ¶¶ 4–8. The District responds that IDEA litigation is not the type of complex federal litigation for which the full USAO *Laffey* Matrix rates were intended. Def.'s Mot. Summ. J. at 11. The Court finds that Plaintiffs have failed to demonstrate that their case is unusually complex, and thus, that full USAO *Laffey* Matrix rates are warranted.

Courts in this district generally do not recognize IDEA litigation as complex when it comes to fee awards. *See, e.g.*, *Flores v. District of Columbia*, 857 F. Supp. 2d 15, 21 (D.D.C. 2012) (finding the case to be "straightforward" and declining to apply full *Laffey* rates); *see also* *McAllister*, 21 F. Supp. 3d at 108–09 (collecting cases). As a result, "an overwhelming number" of IDEA cases in this district use seventy-five percent of *Laffey* Matrix rates when calculating

---

has been forced to only accept work from paying clients, thus detrimentally affecting the "low-income clients who need contingent fee lawyers . . . the most . . . because the system . . . [has] treat[ed] them particularly poorly due to their limited resources"), another public interest favors smaller fee awards: public education itself. "[I]nflated fee awards are far from harmless; they produce windfalls to attorneys at the expense of public education." *Price v. District of Columbia*, 792 F.3d 112, 117 (D.C. Cir. 2015) (Brown, J., concurring). Inflated fees can, in this manner, harm "the very children the IDEA seeks to protect." *Id.* at 118.

[5] Because the D.C. Circuit has not yet ruled on the categorical approach to determining the applicability of *Laffey* Matrix rates or a fixed percentage thereof, this Court continues to reject such an approach and determines fee awards on a case-by-case basis. *See Eley*, 793 F.3d at 105 (Kavanaugh, J., concurring) ("I would simply add that in my view, the United States Attorney's *Laffey* Matrix is appropriate for IDEA cases."); *see also Flood v. District of Columbia*, 172 F. Supp. 3d 197, 206 (D.D.C. 2016) ("By describing IDEA cases as a distinct submarket of legal services, to which a common set of reimbursement rates must apply, *Eley* suggests a categorical approach . . . .") (discussing *Eley*, 793 F.3d at 104–05)). Accordingly, as this Court has done previously, the Court considers the complexity of Plaintiffs' due process proceedings in determining the appropriate hourly rates. *See, e.g.*, *Wilhite v. District of Columbia*, 196 F. Supp. 3d 1, 13 (D.D.C. 2016); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 108–10 (D.D.C. 2014).

16

fee awards. *Platt v. District of Columbia*, 168 F. Supp. 3d 253, 267 (D.D.C. 2016). "[I]n unusual cases, an IDEA plaintiff might be able to 'establish the applicability of [the] *Laffey* [Matrix] by proffering evidence that *their* IDEA proceeding was unusually complex.'" *McNeil v. District of Columbia*, No. 14-cv-1981, 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015) (quoting *Snead v. District of Columbia*, 139 F. Supp. 3d 375, 380 (D.D.C. 2015)). Courts typically deem cases "unusually complex" where they contain factors such as prolonged preparation time, lengthy proceedings, extensive administrative records, high numbers of witnesses and exhibits, and written closing statements. *See, e.g.*, *Cox v. District of Columbia*, 754 F. Supp. 2d 66, 68 n.1, 76 (D.D.C. 2010) (finding a case unusually complex because one student's case spanned two years and involved sixty-five exhibits, and the other student's case spanned seven months and involved fifty exhibits, and the parties filed written closing statements); *Bucher v. District of Columbia*, 777 F. Supp. 2d 69, 74–75 (D.D.C. 2011) (finding a case unusually complex because the proceedings lasted twenty-seven hours over four days, involved twenty-one witnesses and forty-two exhibits, and parties filed written closing statements); *Garvin v. District of Columbia*, 851 F. Supp. 2d 101, 107 (D.D.C. 2012) (finding a case unusually complex because twenty-nine witnesses were listed, the "hearing lasted virtually a full day," the proceedings were "lengthy and contested," the case involved a large administrative record, and the parties "filed lengthy written closing arguments"); *Gaston v. District of Columbia*, No. 14-1249, 2015 WL 5029328 (D.D.C. Aug. 26, 2015) *adopted by*, No. 14-1249, 2015 WL 5332111, at *3, *5–*6 (D.D.C. Sept. 10, 2015) (finding a case complex because it involved fifteen months of work throughout multiple due process hearings).

Plaintiffs fail to show that their underlying administrative proceedings were sufficiently complex to warrant *Laffey* Matrix rates. Supporting their idea that they were, Plaintiffs state that

"[DCPS] disclosed 7 witnesses to testify at the hearing and 15 [e]xhibits with over 80 pages,"
Pls.' Mot. Summ. J. at 10; that "Plaintiffs' administrative hearing record involved 33 exhibits
totaling over 260 pages," Pls.' Mot. Summ. J. at 10; and that the proceeding "required
knowledge of the procedural rules, the substantive rules and, more importantly a working
knowledge of the complex educational issues and the factors underlying/comprising [T.C.'s]
complex disability of autism and how [T.C.'s] needs could be appropriately addressed," Pls.'
Mot. Summ. J. at 13. And, as previously mentioned, Plaintiffs' affiants state that IDEA litigation
requires "specialized non-legal knowledge," Tyrka Aff. ¶ 5, Savit Aff. ¶ 7, Hill Aff. ¶ 5, Hecht
Aff. ¶ 5, involves limited discovery, Tyrka Aff. ¶ 7, Savit Aff. ¶ 8, Hill Aff. ¶ 6, Hecht Aff. ¶ 6,
entails the lack of advanced notice of witnesses and exhibits, Tyrka Aff. ¶ 7, Savit Aff. ¶ 8, Hill
Aff. ¶ 6, Hecht Aff. ¶ 6, and requires "much more legal preparation and a much better general
IDEA familiarity than is required at the federal level," Tyrka Aff. ¶ 8, Savit Aff. ¶ 9, Hill Aff.
¶ 7, Hecht Aff. ¶ 8.

Rather than differentiate this case from a run-of-the-mill IDEA case, Plaintiffs list
attributes that are common to many IDEA cases. Indeed, Plaintiffs identify characteristics that
were present in other cases where courts in this district have awarded fees using rates equivalent
to seventy-five present of *Laffey* Matrix rates. *See, e.g.*, *Platt*, 168 F. Supp. 3d at 257–58, 264–67
(awarding fees at a rate equivalent to seventy-five percent of the *Laffey* Matrix rate in a case that
involved 106 exhibits and ten witnesses, including "two experts in the areas of psychology and
speech-language evaluation," "a case manager/special education teacher," and "a special
education coordinator"); *Wright v. District of Columbia*, No. 11-0384, 2012 WL 79015, at *3–*4
(D.D.C. Jan. 11, 2012) (awarding fees at a rate equivalent to seventy-five percent of the *Laffey*
Matrix rate in a case involving thirty-eight exhibits and sixteen potential witnesses); *McClam v.*

*District of Columbia*, 808 F. Supp. 2d 184, 190 (D.D.C. 2011) (holding that "*Laffey* high-end rates" were inappropriate in a case involving fifty-six exhibits and twenty witnesses). Plaintiffs seem to argue that IDEA cases in general are complex. But without more, the Court has no reason to conclude that Plaintiffs' due process proceeding was "*unusually* complex." *See McNeil*, 2015 WL 9484460, at *6 (quoting *Snead*, 139 F. Supp. 3d at 380) (emphasis added). The Court further analyzes the issue of complexity in the context of the case law relied upon by Plaintiffs for their argument that full *Laffey* rates apply.

### c. Case Law

To further support their argument that they are entitled to full USAO *Laffey* Matrix rates, Plaintiffs cite to cases where courts have awarded fees at similar rates. Pls.' Mot. Summ. J. at 7, 14. In the cases that Plaintiffs cite, the courts found the facts sufficiently complex to warrant full USAO *Laffey* Matrix rates. Pls.' Mot. Summ. J. at 11–13. With respect to four of the cases,[6] the District argues that the cases predate the D.C. Circuit's decision in *Eley*, and thus fail to "conform with the reasoning and requirements" set forth therein. Def.'s Mot. Summ. J. at 10. Therefore, the District argues, these cases do not establish a reasonable hourly rate. Def.'s Mot. Summ. J. at 11. The District also contends that the "evidentiary weight of these cases is eliminated by comparison to the overwhelming majority" of cases in this circuit applying seventy-five percent *Laffey* rates. *Id.* at 10.

---

[6] The courts in *Garvin v. District of Columbia*, 851 F. Supp. 2d 101 (D.D.C. 2012), *Bucher v. District of Columbia*, 777 F. Supp. 2d 69 (D.D.C. 2011), *Cox v. District of Columbia*, 754 F. Supp. 2d 66 (D.D.C. 2010), and *Gaston v. District of Columbia*, No. 14-1249, 2015 WL 5029328 (D.D.C. Aug. 26, 2015) *adopted by*, No. 14-1249, 2015 WL 5332111, at *1 (D.D.C. Sept. 10, 2015), found the underlying administrative proceedings sufficiently complex to warrant an award of the rates sought by the plaintiffs.

IDEA Plaintiffs may show that their requested hourly rate is reasonable through "evidence of recent fees awarded by the courts . . . to attorneys with comparable qualifications handling similar cases." *Eley*, 793 F.3d at 101 (quoting *Covington*, 57 F.3d at 1109). Plaintiffs cite five cases—*Garvin v. District of Columbia*,[7] *Bucher v. District of Columbia*,[8] *Cox v. District of Columbia*,[9] *Holbrook v. District of Columbia*,[10] and *Gaston v. District of Columbia*[11]—where courts in this district awarded the rates sought by the plaintiffs. Pls.' Mot. Summ. J. at 7. In *Garvin*, *Cox*, and *Gaston*, Plaintiffs' counsel in this case represented the plaintiffs seeking attorneys' fees. *Id.* at 7, n.3.

As a baseline matter, the cases cited by Plaintiffs are the exception, not the rule. In this district, "an overwhelming number" of cases awarding IDEA fees adopt rates equivalent to seventy-five percent of *Laffey* Matrix rates. *Platt v. District of Columbia*, 168 F. Supp. 3d 253, 267 (D.D.C. 2016). However, "there has not been a unified approach to the proper rates of attorneys' fees in IDEA cases." *Young v. District of Columbia*, 893 F. Supp. 2d 125, 130 (D.D.C. 2012). Indeed, some courts have awarded full *Laffey* Matrix rates. *See Young*, 893 F. Supp. 2d at 131 (citing *Irving v. D.C. Pub. Schs.*, 815 F. Supp. 2d 119 (D.D.C. 2011); *Bucher*, 777 F. Supp. 2d 69; *Cox*, 754 F. Supp. 2d 66; and *Jackson*, 696 F. Supp. at 102). Regardless, based on recent

---

[7] 851 F. Supp. 101 (D.D.C. 2012).

[8] 777 F. Supp. 2d 69 (D.D.C. 2011). Plaintiffs cite this case as *Ward v. D.C.*, however, the plaintiff's name is Ward Bucher. Further, the case number is the same as that cited by Plaintiffs. Therefore, the Court presumes that Plaintiffs meant to cite *Bucher v. District of Columbia*.

[9] 754 F. Supp. 2d 66 (D.D.C. 2010).

[10] 305 F. Supp. 2d 41 (D.D.C. 2004). Plaintiffs cite this case as *Holbrooke, et al. v. District of Columbia*, however the case number provided, 03-640 (GK), matches the case number in *Holbrook*. Therefore, the Court presumes the mistake to have been a scrivener's error.

[11] No. 14-1249, 2015 WL 5029328 (D.D.C. Aug. 26, 2015) *adopted by*, No. 14-1249, 2015 WL 5332111, at *1 (D.D.C. Sept. 10, 2015).

case law from this district, the "prevailing rate" for IDEA fee awards in this community seems to be seventy-five percent of *Laffey* Matrix rates. *Compare Reed*, 134 F. Supp. 3d at 131 (collecting cases that awarded the seventy-five percent rates, and noting that "scores" of this Court's decision have awarded those rates), *with, e.g.*, *Jackson*, 696 F. Supp. 2d at 102–03 (collecting cases supporting higher rates for IDEA cases, but including only two cases from this Court).

Four of the cases that Plaintiffs cite provide limited support for their position because they do not involve "*similar* services" to those performed by Plaintiffs' counsel here. *Eley*, 793 F.3d at 104 (emphasis removed) (quoting *Covington*, 57 F.3d at 1109). In *Cox*, the plaintiffs' attorney provided services for four plaintiffs. 754 F. Supp. 2d at 68 n.1. The Court found that the plaintiffs' administrative hearings were "complex," because one student's case spanned two years and involved sixty-five exhibits, and that the other student's case spanned seven months and involved fifty exhibits. *Id.* at 76. In *Garvin*, the Court characterized the due process hearing as "lengthy and contested," citing the extensive record and the fact that the "hearing lasted virtually a full day." *Garvin*, 851 F. Supp. 2d at 106–07. In *Gaston*, the District "[did] not dispute [the p]laintiff's characterization of the underlying administrative action as 'complex.'" 2015 WL 5029328 at *3. Moreover, the Court noted that the proceedings were complex in light of the six months of preparation required for the first hearing, the additional nine months of work necessitated "in no small measure by the District's ongoing intransigence," the need to analyze psychiatric records, and the need for a second hearing following DCPS's failure to comply with the first. *Id.* at *5–*6. Finally, the *Bucher* Court awarded the full *Laffey* rates, in part because it concluded that the due process hearing was complex because it lasted twenty-seven hours over four days, involved twenty-one witnesses and forty-two exhibits, and the parties filed written

closing statements. 777 F. Supp. 2d at 75.[12] Because of the unusually complex nature of the issues in *Cox*, *Garvin*, and *Gaston*, and *Bucher*, those courts determined that full *Laffey* Matrix rates were appropriate. *Garvin*, 851 F. Supp. 2d at 107; *Bucher*, 777 F. Supp. 2d at 74; *Cox*, 754 F. Supp. 2d at 76; *Gaston*, 2015 WL 5029328 at *5–*6.

As outlined above, Plaintiffs have not demonstrated that their case is unusually complex compared to ordinary IDEA due process proceedings, and they have not shown that their case is similar to the unusually complex cases they cite—*Cox*, *Garvin*, *Gaston*, and *Bucher*. Plaintiffs presented three witnesses and the District presented none.[13] Closing statements were entirely oral, unlike the lengthy written statements required in the cases cited by Plaintiffs. *See, e.g.*, *Garvin*, 851 F. Supp. 2d at 107; *Bucher*, 777 F. Supp. 2d at 75; *Cox*, 754 F. Supp. 2d at 76. And even though fifty exhibits were introduced into evidence, this factor alone does not make the proceeding complex. *See, e.g.*, *Platt*, 168 F. Supp. 3d at 257–58, 264–67. Although Plaintiffs moved into evidence forty-five exhibits, the District did not object to any of them, Hearing Officer Determination at 2, suggesting that the hearing was not particularly contentious. Thus,

---

[12] *Bucher* predates the D.C. Circuit's *Eley* decision, issued in 2015. *See Bucher*, 777 F. Supp. 2d 69 (issued Apr. 11, 2011). As such, the *Bucher* Court partially awarded *Laffey* rates because it relied on the fact that the District failed to provide sufficient evidence to justify its proposed DCPS guideline rates. 777 F. Supp. 2d at 75. In *Eley*, the Circuit Court expressly held that a district court errs when it applies a version of the *Laffey* Matrix "because no evidence was produced *disproving*" that matrix's applicability. In doing so, as the Court did in *Bucher*, the district court impermissibly removed the plaintiff's burden "to demonstrate that her suggested rate [is] 'in line with those prevailing in the community for similar services.'" *Eley*, 793 F.3d at 105 (quoting *Covington*, 57 F.3d at 1109). *Bucher*'s reasoning, thus, does not hold water under the D.C. Circuit's subsequent directive.

[13] The Court recognizes Plaintiffs' argument that their counsel was required to prepare for cross-examination of the District's witnesses, even if, at the hearing, the District chose not to call any witnesses. However, the District listed only six or seven witnesses, *see* Jester Decl. ¶ 22 (stating six); Pls.' Mot. Summ. J. (stating seven). This number is considerably lower than in cases where courts have found the number of witnesses significant. *See, e.g.*, *Garvin*, 851 F. Supp. 2d at 107 (twenty-nine witnesses); *Bucher*, 777 F. Supp. 2d at 74 (twenty-one witnesses).

Plaintiffs have not shown that the administrative proceeding was unusually complex, particularly in light of the factors relied upon by the courts in the cases set forth by Plaintiffs.

Additionally, in three of the five cases cited by Plaintiffs as evidence for an award of full USAO *Laffey* Matrix rates—*Garvin*, *Bucher*, and *Cox*—the plaintiffs sought fees at hourly rates below the applicable USAO *Laffey* Matrix rate. *Garvin*, 851 F. Supp. 2d at 107 (awarding fees at plaintiffs' requested rate where plaintiffs sought $400 per hour for some work and $450 for other work when the applicable *Laffey* rates were $465 and $475, respectively); *Bucher*, 777 F. Supp. 2d at 75 (awarding fees at plaintiffs' requested rate where plaintiffs sought $300 per hour for some work and $350 for other work when the applicable *Laffey* rate was $465); *Cox*, 754 F. Supp. 2d at 76 (awarding fees at plaintiffs' requested rate where plaintiffs sought $400 per hour when the applicable *Laffey* rate was $465). As a result, *Garvin*, *Bucher*, and *Cox* fail to provide the Court with evidence demonstrating that Plaintiffs are entitled to recover attorneys' fees at the full *Laffey* Matrix rates.

The final case cited by Plaintiffs, *Holbrook*, is a 2004 case in which Judge Kessler awarded Ms. Jester $280 per hour in fees, and the District did not object to that amount. *Holbrook v. District of Columbia*, 305 F. Supp. 2d at 45. Because there the District conceded that the rate was reasonable, Plaintiffs argue that the District essentially must "admit that [Plaintiffs'] counsel's rate . . . $568 per hour is not reasonable over thirteen years later in 2015."[14] Pls.' Mot. Summ. J. at 14. Notably, in *Holbrook*, because the District conceded that Plaintiffs' counsel's hourly rates were reasonable, the Court simply accepted these rates and then addressed issues related to the "[h]ours [e]xpended on [p]articular [t]asks." 305 F. Supp. 2d at 45. More directly to Plaintiffs' point, the mere fact that the District previously consented to a certain rate for Ms.

---

[14] Ms. Jester rendered the legal services in 2002, but fees were not awarded until 2004.

Jester does not mean that they cannot now oppose a higher rate on the *Laffey* scale. Particularly in light of the development of case law in this circuit favoring the prevailing rate of seventy-five percent of full USAO *Laffey* Matrix rates, the Court will not call into question the District's 2004 litigation strategy of conceding that Ms. Jester's hourly rates were reasonable.

The cases cited by Plaintiffs are insufficient to show that full USAO *Laffey* Matrix rates are the prevailing market rates for IDEA litigation, especially in light of the "overwhelming" authority pointing to the seventy-five percent rate.[15] *See Platt*, 168 F. Supp. 3d at 267. Moreover, Plaintiffs have not shown this case to be analogous to *Garvin*, *Bucher*, or *Cox*, where courts departed from the prevailing rate of seventy-five percent because of the complexity of the cases before them. The Court therefore finds no reason to depart from the "overwhelming number" of

---

[15] In addition to the cases cited in Plaintiffs' motion for summary judgment and subsequent filings, the Court considered the cases set forth in Plaintiffs' "Notice of Recent Case," ECF No. 14. The cases cited by Plaintiffs do not change the Court's reasoning. In *Wimbish v. District of Columbia*, the plaintiff filed two due process complaints, attended multiple proceedings, filed for a preliminary injunction in federal court, and had to brief a novel issue—what percentage of the student's private school education DCPS was required to fund. No. 15-1429, 2017 WL 1743497, at *4–*5. And, the plaintiff sought attorneys' fees on the federal stay-put order litigation, not the underlying administrative proceedings. *Id.* at *1. Therefore, *Wimbish* is distinguishable from ordinary IDEA cases. *Joaquin v. District of Columbia* and *Daniels v. District of Columbia* involved underlying federal litigation in addition to the administrative due process hearings. *See Joaquin*, 210 F. Supp. 3d 64, 66; *Daniels*, No. 14-665, 2017 WL 1154948, at *1. Thus, these cases are factually distinguishable for similar reasons. In *Flood*, the court initially stated that the complexity of the individual case should not be a factor in determining the applicable hourly rate, but later stated that full *Laffey* rates are appropriate "where the applicant demonstrates 'that IDEA litigation is as complex as the type of litigation' for which the *Laffey* Matrix was initially created." 172 F. Supp. 3d at 209 (quoting *Eley*, 793 F.3d at 105). Plaintiffs have not done so here. In *Shaw v. District of Columbia*, the court found that the plaintiff had met her burden of establishing the appropriateness of the rates "based on the complexity of the underlying action." 210 F. Supp. 3d 46, 48. For reasons already stated multiple times in this opinion, Plaintiffs have not done so here. Finally, *Young v. Sarles* did not involve IDEA litigation; it was about a First Amendment and civil rights case, and as such, fails to provide the Court with guidance as to the appropriate hourly rate here. 197 F. Supp. 3d 38, 41–42, 45–46. In short, the supplemental cases cited by Plaintiffs are distinguishable from this case.

cases where seventy-five percent of the *Laffey* Matrix rates has been found to be the prevailing rate in the community for IDEA litigation. *See Platt*, 168 F. Supp. 3d at 267; *see also McNeil v. District of Columbia*, No. 14-1981, 2015 WL 9484460, at *6 (D.D.C. Dec. 29, 2015) (reaching the same conclusion); *Reed*, 134 F. Supp. 3d at 131 (collecting cases). The Court thus awards Plaintiffs a rate equivalent to seventy-five percent of the *Laffey* Matrix rate case.

### d. Statement of Interest of the United States

As evidence supporting their argument for full-*Laffey* rate fees, Plaintiffs also include the Statement of Interest filed by the United States in *Eley v. District of Columbia*, No. 11-309 (BAH) (D.D.C. filed Feb. 7, 2011).[16] Plaintiffs contend that based on the Statement of Interest, it is the Justice Department's position that full USAO *Laffey* Matrix should apply to IDEA litigation. Pls.' Mot. Summ. J. at 8–9. However, as courts have noted in the past, the Statement of Interest merely distinguishes between the USAO *Laffey* Matrix rates and the LSI *Laffey* Matrix rates; it does not advocate for an applicable prevailing rate. *See Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 88 (D.D.C. 2016) (stating that the Statement of Interest "focuses on distinguishing between USAO *Laffey* Matrix rates and LSI *Laffey* Matrix rates[,] not on determining the applicable prevailing rate" (internal quotation marks and citation omitted)). *See generally* Statement of Interest. Moreover, the original Statement of Interest was accompanied

---

[16] The Court notes that the Statement of Interest is incomplete as filed. The original filing in *Eley v. District of Columbia*, No. 11-309, ECF No. 49, contains two exhibits—the Declaration of Dr. Laura A. Malowane and the Declaration of Joseph A. Yablonski—both of which were omitted from Plaintiffs' filing. *Compare Eley*, No. 11-309, ECF No. 49 *with* Pls.' Mot. Summ. J., Ex. 12, ECF No. 7-15. Dr. Malowane's Declaration seemingly undercuts Plaintiffs' request for full *Laffey* Matrix rates in that it indicates that based on the market survey attached thereto, the prevailing market rate was below the USAO *Laffey* Matrix rate. *See Eley*, No. 11-309, ECF No. 49-1 ¶ 63 (concluding that "the prevailing hourly rate . . . is between $390 and $512[, which] . . . is slightly lower than the $520 rate indicated by the USAO *Laffey* Matrix"); *see also Taylor v. District of Columbia*, 205 F. Supp. 3d 75, 88 (D.D.C. 2016) (discussing Statement of Interest and Dr. Malowane's Declaration).

by a supporting declaration from Dr. Laura A. Malowane, which Plaintiffs did not include here.

*Compare Eley*, No. 11-309, ECF No. 49 *with* Pls.' Mot. Summ. J., Ex. 12, ECF No. 7-15. Dr.

Malowane concluded that "the prevailing hourly rate" is actually "slightly lower" than the *Laffey*

rate. *Eley*, No. 11-309, ECF No. 49-1 ¶ 63. The Statement of Interest therefore demonstrates that

the appropriate IDEA rates may be lower than those set forth in the USAO *Laffey* Martix even

based on the materials that Plaintiffs cite. Thus, the Court does not find the Statement of Interest

persuasive in demonstrating that the Plaintiffs have met their "burden of providing sufficient

evidence that the prevailing market rate for IDEA proceedings warrants an award of the full

USAO *Laffey* [Matrix] rate" in the instant case. *See Taylor*, 205 F. Supp. 3d at 88 (reaching the

same conclusion with respect to the Statement of Interest).

### e. Delay in Payment

For their final argument, Plaintiffs cite to the District's delay in payment up to this point

to support its claim to full *Laffey* rates. Pls.' Mot. Summ. J. at 16–17. They argue that the Court

should at least award fees at a higher rate than one at which the fees were incurred. Pls.' Mot.

Summ. J. at 16–17. Outside of the IDEA context, some courts have acknowledged that delay in

payment may be an appropriate factor to consider in determining fee rates. *See Missouri v.*

*Jenkins ex rel. Agyei*, 491 U.S. 274, 284 (1989) ("An adjustment for delay in payment is . . . an

appropriate factor in the determination of what constitutes a reasonable attorney's fee under [42

U.S.C.] § 1988."); *Copeland v. Marshall*, 641 F.2d 880, 893 & n.23 (D.C. Cir. 1980) (en banc)

(observing, in a Title VII case, that "[a] percentage adjustment to reflect the delay in receipt of

payment . . . may be appropriate," and could be based on "present hourly rates"). However, as a

general matter, compensation for a delay in payment is most relevant in civil rights matters

because of how lengthy the cases are in comparison to IDEA litigation. *See Jenkins*, 491 U.S. at

283 (noting that compensation was received several years after the services were rendered, "as it frequently is in complex civil rights litigation"). Plaintiffs here do not explain why upward-adjusted rates are specifically appropriate here, nor do they provide examples of courts applying higher hourly rates in IDEA cases under similar circumstances. *See* Pls.' Mot. Summ. J. at 16–17. In fact, they do not cite to any authority in support of their argument. Pls.' Mot. Summ. J. at 16–17. The Court is not inclined to break with the overwhelming number of cases that have not taken delay in payment in IDEA cases into account. Thus, the Court keeps its fees award at seventy-five percent of the applicable *Laffey* rates.

*　　　　　*　　　　　*

In short, Plaintiffs have not shown that full USAO *Laffey* Matrix rates "are in line with those prevailing in the community for similar services," and thus have not shown that they are entitled to such an award from the Court. *Eley*, 793 F.3d at 104 (quoting *Covington*, 57 F.3d at 1109). In contrast, every indication suggests that the rates "prevailing in the community" for IDEA litigation are actually seventy-five percent of *Laffey* Matrix rates. *See supra* Part V.B.1.c. The Court thus awards Plaintiffs their attorneys' fees using a rate equivalent to seventy-five percent of the applicable *Laffey* Matrix rate.

The Court calculates Plaintiffs' total attorneys' fees by first adopting the applicable *Laffey* Matrix rates.[17] The Court then reduces the rate by one-quarter to reflect the prevailing rate

---

[17] Ms. Jester has been a practicing attorney since 1980. Jester Decl. ¶ 2. Accordingly, she had thirty-six years of experience at the time Plaintiffs filed their motion for summary judgment in 2016. *See* Pl.'s Mot. Summ. J. (filed Dec. 23, 2016). Ms. Jester's applicable hourly rates are as follows: (1) $520 under the 2014–15 *Laffey* Matrix, *see* 2014–15 *Laffey* Matrix, (2) $568 under the 2015–2016 *Laffey* Matrix, *see* 2015–2016 *Laffey* Matrix, and (3) $581 under the 2016–2017 *Laffey* Matrix, *see* 2016–2017 *Laffey* Matrix.

in the community for IDEA litigation.[18] The Court then multiplies the hourly rates by Plaintiffs'

attorney's compensable hours to determine her total fee award.[19] Based on these calculations, the

Court will award Plaintiffs $38,351.25 in attorneys' fees.

## 2. Paralegal Fees

The District argues that Plaintiffs have not proven that paralegals in IDEA administrative

proceedings are entitled to the full USAO *Laffey* Matrix rates, and advocates that the Court

should instead award seventy-five percent of the *Laffey* paralegal rates. Def.'s Mot. Summ. J. at

14. Ms. Jester states that her paralegal "has formal training . . . and has worked with [her] . . . for

approximately 19 years." Jester Decl. ¶ 14. The Court sees no reason that the Court's analysis

above does not also apply to an IDEA paralegal. *See, e.g.*, *Briggs v. District of Columbia*, 73 F.

Supp. 3d 59, 64 (D.D.C. 2014) (awarding paralegal and attorneys' fees at the same rate);

*McAllister*, 21 F. Supp. 3d at 105–06 (awarding plaintiff's paralegal fees at the same rate as

attorneys' fees). This is in line with previous courts, who have awarded Ms. Jester paralegal fees

---

[18] Ms. Jester's reduced hourly rates are $390.00 for 2014–2015, $426.00 for 2015–2016, and $435.75 for 2016–2017.

[19] Ms. Jester reports 96 hours of compensable work on Plaintiffs' case, which the District does not challenge. *See* J & W Invoice at 1–13; Def.'s Mot. Summ. J. 1–18. Ms. Jester performed 71.5 of the hours during the period governed by the 2014–15 *Laffey* Matrix. *See* 2014–15 *Laffey* Matrix (setting 2014–15 *Laffey* Matrix rates for the period between June 1, 2014 and May 31, 2015); J & W Invoice at 1–8 (listing work performed between Dec. 1, 2014 and May 27, 2015). She performed 21.5 of the hours during the period governed by the 2015–2016 *Laffey* Matrix. *See* 2015–2016 *Laffey* Matrix (setting 2015–2016 *Laffey* Matrix rates for the period between June 1, 2015 and May 31, 2016); J & W Invoice at 8–13 (listing work performed between June 1, 2015 and Feb. 17, 2016). Lastly, Ms. Jester performed 3.0 of the hours during the period governed by the 2016–2017 *Laffey* Matrix. *See* 2016–2017 *Laffey* Matrix, (setting 2016–2017 *Laffey* Matrix rates for the period between June 1, 2016 and May 31, 2017); J & W Invoice at 13 (listing work performed between July 28, 2016 and Sept. 2, 2016).

The Court's calculated fee amounts are as follows: $27,885.00 for 2014–2015 (71.5 hours at $390.00 per hour), $9,159.00 for 2015–2016 (21.5 hours at $426.00 per hour), and $1,307.25 for 2016–2017 (3.0 hours at $435.75 per hour). Adding these amounts yields $38,351.25.

at a reduced rate of seventy-five percent of the appropriate USAO *Laffey* Matrix rate. *See, e.g.*, *Briggs*, 73 F. Supp. 3d at 64 (awarding fees for Ms. Jester's paralegal); *Parks v. District of Columbia*, 895 F. Supp. 2d 124, 132 (D.D.C. 2012) (employing three-quarters of the *Laffey* Matrix rate for Ms. Jester's paralegal). Thus, the Court awards Plaintiffs' paralegal fees at an hourly rate of $117.75, for a total of $176.63.[20]

### C. Appropriate Cost Award

In its cross-motion for summary judgment, the District argues that Plaintiffs seek reimbursement of costs not permitted under the IDEA. *See* Def.'s Mot. Summ. J. at 15–17. The District specifically contends that Plaintiffs' counsel billed travel time at twice the legally permitted amount,[21] "inappropriately charged" the District for mileage, and billed "an excessive amount" of costs for photocopying and faxing. Def.'s Mot. Summ. J. at 15–16. The Court awards Plaintiffs travel costs at fifty percent of the appropriate hourly rate, mileage costs at the rate stipulated for 2015 by the U.S. General Services Administration ("GSA"), photocopies and faxes at a reduced rate of fifteen cents per page, and the full amount of postage sought.

An attorney "is entitled to all expenses associated with the litigation that [she] would normally expect to pass on to fee paying clients," so long as the costs are reasonable. *Holbrook v. District of Columbia*, 305 F. Supp. 2d 41, 46 (D.D.C. 2004) (quoting *McKenzie v. Kennickell*, 645 F. Supp. 437, 452 (D.D.C. 1986)). Thus, "[a]n award of costs for copying, faxing, and postage . . . [is] customarily included in fees awards." *Kaseman v. District of Columbia*, 329 F.

---

[20] At the time the work was performed, in August 2016, Ms. Jester's paralegal's rate was $157. Reduced by twenty-five percent, the paralegal rate is $117.75. This rate multiplied by the 1.5 hours invoiced yields $176.63.

[21] The District initially contended that Plaintiffs are seeking reimbursement for travel costs at the full hourly rate, *see* Def.'s Mot. Summ. J. at 15, but later corrected itself by stating that Plaintiffs' counsel billed her travel time at half the USAO *Laffey* Matrix rate, *id.* at 16.

Supp. 2d 20, 28 n.7 (D.D.C. 2004). Additionally, "mileage charges may be included if they are routinely billed by an attorney to her client." *McClam v. District of Columbia*, 808 F. Supp. 2d 184, 191 (D.D.C. 2011) (citing *New York v. Microsoft Corp.*, 297 F. Supp. 2d 15, 47–48 (D.D.C. 2003)). Parking costs are also recoverable in IDEA fee litigation. *See DeLa Cruz v. District of Columbia*, 82 F. Supp. 3d 199, 210 (D.D.C. 2015) (finding that "[$18.00] charge for parking should be reimbursed at cost").

### 1. Travel Costs

Plaintiffs seek recovery of Ms. Jester's travel time at a rate of fifty percent of her hourly rate. *See* J & W Invoice. The District argues that the Court should reduce Ms. Jester's travel rate to fifty percent of "the hourly rate deemed appropriate by this Court." Def.'s Mot. Summ. J. at 16. The Court concludes that Ms. Jester's travel time should be awarded at a rate of fifty percent of seventy-five percent of the applicable USAO *Laffey* Matrix rates.

"In [the D.C.] Circuit, travel time generally is compensated at no more than half the attorney's appropriate hourly rate." *Blackman v. District of Columbia*, 397 F. Supp. 2d 12, 15 (D.D.C. 2005). This Court has previously awarded plaintiffs' requests for travel costs at a rate of fifty percent of the hourly rate actually awarded by the court. *See, e.g.*, *Wilhite v. District of Columbia*, 196 F. Supp. 3d 1, 15–16 (D.D.C. 2016); *McAllister v. District of Columbia*, 21 F. Supp. 3d 94, 106 (D.D.C. 2014).

Plaintiffs' counsel's invoice shows that she billed travel time at half of the full *Laffey* rate. *See* J & W Invoice at 2–3, 6–8, 11–12, ECF No. 7-6. Because Plaintiffs have already appropriately reduced the travel costs to half of their proposed hourly rate, the Court will only reduce the hourly rate for the travel costs by an additional twenty-five percent to reflect the change in the hourly rate outlined above. This yields the same amount as fifty percent of

seventy-five percent of the applicable full USAO *Laffey* Matrix rates, which is the appropriate reimbursement rate for travel costs. *See, e.g.*, *Blackman*, 397 F. Supp. 2d at 15. Because the District does not challenge Plaintiffs' request for compensation related to their counsel's travel time, but only argues that it should be changed to reflect the appropriate hourly fee award,[22] the Court will award Plaintiffs $2,100.00 in travel costs.[23]

### 2. Mileage and Parking

Plaintiffs seek reimbursement for Ms. Jester's mileage costs at a rate of fifty-eight cents per mile, which is "the rate paid by [the] D.C. Superior Court." Pls.' Mot. Summ. J. at 15. The District disputes Plaintiffs' mileage charges and argues that it should not be "responsible for subsidizing [Ms. Jester's] travel from her office in Great Falls, Virginia." Def.'s Mot. Summ. J. at 17. The District states that Plaintiffs should absorb this cost because there "is no basis for payment of this cost under the IDEA." *Id.* The Court finds that Plaintiffs should be reimbursed for mileage costs, but concludes that the appropriate reimbursement rate is that promulgated by the U.S. General Services Administration ("GSA") and adjusts Plaintiffs' mileage award accordingly. And because the District does not dispute Plaintiffs' parking costs, the Court awards them as requested by Plaintiffs.

Plaintiffs' counsel states that her firm normally charges the mileage expenses described

---

[22] *See supra* note 20.

[23] Four of Ms. Jester's travel time entries were billed between January 2015 and May 2015, and two were billed in August 2015. The Court therefore applies the 2014–2015 USAO *Laffey* rate ($520) to the first four entries, reduces it by fifty percent to reflect the appropriate hourly rate for travel time ($260), and reduces it once more by twenty-five percent to yield $195. Multiplying 6.4 hours by $195 yields $1,248. For the last two travel time entries, the Court applies the 2015–2016 USAO *Laffey* rate ($568), reduces it by fifty percent to reflect the appropriate hourly rate for travel time ($284), and reduces it once more by twenty-five percent to yield $213. Multiplying 4.0 hours by $213 yields $852. Thus, the total travel costs the Court will award are $2,100.

in this case. *See* Jester Decl. ¶ 17. These charges appear to the Court to be reasonable. Courts in

this district, including this Court, have previously awarded Ms. Jester similar mileage costs. *See,*

*e.g.*, *Briggs*, 73 F. Supp. 3d at 64; *Parks*, 895 F. Supp. 2d at 133; *McClam*, 808 F. Supp. 2d at

191–92. In conclusory terms, the District argues that it should not have to pay for Ms. Jester's

travel, because her office is in Great Falls, Virginia. The District's argument does not hold water.

Great Falls is a suburb of Washington D.C., somewhere entirely reasonable for an attorney

representing a client in the District of Columbia to live and work. *See Gene R. Powers-Temp.*

*Quarters Subsistence Expenses*, 62 Comp. Gen. 401, 401 (May 23, 1983). This conclusion is

bolstered by the fact that courts in this district have previously awarded Ms. Jester's mileage and

time costs from Great Falls. *See Coates v. District of Columbia*, 79 F. Supp. 3d 42, 52 (D.D.C.

2015) (discussing the fact that "Ms. Jester has her office in Virginia and must travel significant

distances to the District," yet reimbursing travel costs at "one-half the hourly rate set by the

Court"); *see also Briggs v. District of Columbia*, 73 F. Supp. 3d 59, 64 (D.D.C. 2014) (awarding

Ms. Jester's travel costs at fifty percent her hourly rate, as well as the requested mileage costs).

Ms. Jester states that the mileage rate she charges—fifty-eight cents per mile—is

"endorsed by the federal government and D.C. Superior Court." Jester Decl. ¶ 17. Although this

may be the rate used at Superior Court, *see* Pls.' Mot. Summ. J., Ex. 19, ECF No. 7-22, the

federal government's mileage rate is promulgated by the GSA and fluctuates over time, *POV*

*Mileage Rates (Archived)*, U.S. GENERAL SERVICES ADMINISTRATION,

http://www.gsa.gov/portal/content/103969 (last reviewed Dec. 27, 2016). All the mileage for

which Ms. Jester has invoiced DCPS accrued in 2015 at which time the GSA mileage rate for

privately owned automobiles was $0.575. The Court will therefore award Ms. Jester's mileage

costs at the GSA rate, for a total of $118.45.[24]

### 3. Photocopying, Faxing, and Postage

Plaintiffs seek reimbursement of twenty-five cents per page of photocopying and faxing. In support of their argument, they cite to the rate often awarded at D.C. Superior Court of twenty-five cents per page. Defendants argue that the Court should reimburse Plaintiffs at a rate of fifteen cents per page because the rate that Plaintiffs seek has been found excessive by other courts in this district. Def.'s Mot. Summ. J. at 17.

As previously stated, "[c]osts for copying, faxing, and postage" are customarily awarded in IDEA fee litigation. *McClam*, 808 F. Supp. 2d at 190–91 (citing *Kaseman*, 329 F. Supp. 2d at 28 n.7). These costs have generally been reimbursed at the reduced rate of fifteen cents per page. *See e.g.*, *Salazar v. District of Columbia*, 991 F. Supp. 2d 39, 63 (D.D.C. 2014) (reducing the plaintiff's fax rate from $0.50 per page to $0.15 per page); *Johnson v. District of Columbia*, 850 F. Supp. 2d 74, 81–82 (D.D.C. 2012) (concluding that the $0.15 per page rate will suffice for both faxes and photocopies in the absence of any indication that the party requesting the fees paid a higher amount to an outside vendor); *see also McClam*, 808 F. Supp. 2d at 191 (describing recovery for copying and faxing at $0.25 per page as excessive). *But see Huntley v. District of Columbia*, 860 F. Supp. 2d 53, 61 (D.D.C. 2012) (awarding $1.00 per page for faxing expenses where the costs were not contested by the defendant).

Beyond asserting that twenty-five cents per page is the rate awarded by the D.C. Superior Court and listing the typical elements required to make photocopies, such as "paper, toner, and

---

[24] Additionally, the District does not contest Plaintiffs entitlement to the reimbursement of parking charges, which are customarily included in attorneys' fees awards. *See DeLa Cruz*, 82 F. Supp. 3d at 210 (awarding the plaintiffs $18.00 in parking costs). Given that these costs are reasonable, the Court will also award Plaintiffs their undisputed parking costs, in the amount of $18.00.

electricity," Plaintiffs provide no explanation for why their rate exceeds the fifteen cents per page ratio used in this circuit. *See Johnson*, 850 F. Supp. 2d at 81–82 (finding $0.15 per page reasonable in the absence of any indication that the party requesting the fees paid a higher amount to any outside vendor); Pls.' Mot. Summ. J. at 15–16; Pls.' Opp'n at 5, ECF No. 12. "Without intending any disharmony between the Courts, this Court does not agree with the Superior Court's payment scheme." *Coates v. District of Columbia*, 79 F. Supp. 3d 42, 51 (D.D.C. 2015). Accordingly, the Court reduces Plaintiffs' photocopying and faxing costs to fifteen cents per page. Thus, the Court awards Plaintiffs $339.60 for faxes and copies.[25]

*   *   *

Taken together, the Court will award $38,527.88 in attorneys' fees and $2,577.85 in costs. The total amount of Plaintiffs' fee award is $41,105.73.

## VI. CONCLUSION

For the foregoing reasons, the Court grants in part and denies in part Plaintiffs' motion for summary judgment, and grants in part and denies in part Defendant's cross-motion for summary judgment.[26] An order consistent with this Memorandum Opinion is separately and

---

[25] Additionally, the District does not dispute Plaintiffs' postage charges. Because these charges are reasonable and are typically included in IDEA litigation fee awards, the Court will also award Plaintiffs the $1.80 sought for postage.

[26] If Plaintiffs choose to file a timely request for an additional award of fees, as compensation for the time and effort that their attorney reasonably expended in seeking their award of attorneys' fees, the Court will entertain such a motion at that time. *See* Compl. at 3 (requesting an "[a]ward to Plaintiffs, pursuant to IDEA, [of] the attorney fees and costs incurred by virtue of the instant lawsuit"); *see also Kaseman*, 444 F.3d at 640 (noting that parties who prevail at the administrative level can also recover "fees on fees" for time devoted to obtaining attorneys' fees). For purposes of facilitating informal resolution of such amounts, the Court notes that it has used the same hourly rate to determine "fees-on-fees" awards as it has for fees awards. *See McNeil v. District of Columbia*, 233 F. Supp. 3d 150, 2017 WL 456390, *3 (D.D.C. 2017) ("Neither the Plaintiffs nor the District have adequately shown that the fee litigation and underlying proceeding are so distinct as to constitute different 'markets' and justify different

contemporaneously issued.

Dated:  August 31, 2017        RUDOLPH CONTRERAS
               United States District Judge

---

compensation. The Court thus instead continues to calculate the appropriate fee at 75% of the applicable Laffey rate."). However, the Court notes that it reduces its "fees-on-fees" awards based on the level of success achieved in the underlying fees petition, at a mathematical proportion. *See McNeil v. District of Columbia*, 2017 WL 456390, *10. Because Plaintiffs sought fees in the amount of $54,813.08, Compl. at 3, but the Court awards only $41,105.73, any fees would likely be reduced by twenty-five percent based on the relative success achieved in this fees petition.